PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VALENTINE BALOGUN, | ) | |
| | ) | CASE NO.  4:11CV0804 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| C.O. KISH, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

*Pro se* Plaintiff Valentine Balogun filed this *Bivens*[1] action against Northeast Ohio

Correctional Center ("NEOCC") Corrections Officer Kish, NEOCC Special Investigative

Services Officer Macklyn, NEOCC Corrections Officer Fox, NEOCC Security Chief Guzman,

NEOCC Lieutenant Frail, NEOCC Disciplinary Hearing Officer Cominski, and NEOCC Warden

Rushing.  In the Complaint, Plaintiff alleges he was unfairly accused of engaging in a group

demonstration after he and other inmates complained about the behavior of a corrections officer.

He seeks monetary damages.

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.
388 (1971).  While plaintiff cites 42 U.S.C. § 1983, that section is inapplicable, as there
is no allegation of action under color of State law.  Plaintiff is a federal prisoner in the
custody of the Bureau of Prisons.  *Bivens* provides federal inmates and detainees with a
cause of action analogous to § 1983.

(4:11CV0804)

# I.  Background

Plaintiff contends Corrections Officer Kish called him a derogatory term that referenced his immigration status.  He claims he attempted to speak with Kish about language he considered to be offensive, but the Corrections Officer would not listen to his complaint.  Plaintiff was sitting with three other inmates at a table in the housing unit when Corrections Officer Fox entered the room.  By this time, other inmates had gathered around the table.  They expressed their concerns about Kish to Officer Fox.  Lieutenant Frail was then called to the unit.  He advised the inmates that he would speak to Kish and asked if there were any other concerns.  The inmates indicated there were none and Lieutenant Frail stepped away.

At that time, the inmates in Plaintiff's housing unit were called to "chow."  Complaint (ECF No. 1) at 3.  The inmates refused to go and the unit was placed on lock down status.  The officers identified several inmates they believed to be encouraging the group to refuse the order.  Those inmates were taken to segregation.  Plaintiff was not among them.  The remaining inmates were again offered the opportunity to go to eat their meal, and this time they complied with the order.

Plaintiff was taken to segregation four days later and charged with participating in a group demonstration.  Although he denied the charges, he was convicted at a disciplinary hearing and was sanctioned with loss of 27 days good time credit, 30 days in disciplinary segregation, and 90 days loss of commissary privileges.  The Disciplinary Hearing Officer also recommended a disciplinary transfer.

2

(4:11CV0804)

Plaintiff contends he was targeted for segregation on the basis of race.  He indicates he was incorrectly identified from a video recording of the day room at the time of the incident. ECF No. 1-2 at 2; ECF No. 3 at 3.  The video shows three inmates of color were sitting at the table.  Plaintiff was identified as one of the inmates at the table; however, Plaintiff denies that he is the inmate in question.  ECF No. 1-2 at 2; ECF No. 3 at 3.  Furthermore, he contends that although there were approximately 60 inmates in the unit, only six of these inmates were charged with participating in a demonstration.  ECF No. 1 at 3-4; ECF No. 3 at 2.  Of those six inmates, he indicates three were people of color, one was Canadian, and two were Hispanic.  ECF No. 3 at 2.  He indicates the two Hispanic inmates were found not guilty by the Disciplinary Hearing Officer.  ECF No. 3 at 2.  He asserts that this is a denial of equal protection.  In addition, Plaintiff claims he was denied the right to a fair disciplinary hearing.  Finally, Plaintiff contends Officer Kish violated his Eighth Amendment rights by referring to him in a derogatory manner.

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted or if it lacks an arguable basis in law

(4:11CV0804)

or fact.[2] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.  A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal* , --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true.  *Twombly*, 550 U.S. at 555.  Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S.Ct. at 1949.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id.*  In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

---

[2] A claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997) (overruled on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

(4:11CV0804)

## III.  Law and Analysis

### A.  Equal Protection

Plaintiff contends he was targeted for discipline on the basis of his race.  The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 68182 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Plaintiff actually sets forth two equal protection claims.  He first contends that he was mistaken for the group leader on the surveillance tape because he is of the same race as this individual.  Plaintiff's second claim asserts selective enforcement of disciplinary rules.  He claims that of the 60 inmates in the unit who refused to go to the meal, only six were disciplined, and three of those inmates, including Plaintiff, were of the same race.

Plaintiff's first claim fails to show discrimination which targeted a suspect class or which intentionally treated him differently than other similarly situated inmates without any rational basis for the difference.  He claims he was incorrectly identified as one of the group leaders on the surveillance tape because he is of the same race as that individual.  In this case, Defendants were not targeting a suspect classification, they were targeting six individuals identified from the

5

(4:11CV0804)

surveillance tape as the leaders of the group demonstration.  Although race may have been one of the factors used by Defendants to determine the identities of the individuals on the tape, this allegation does not support Plaintiff's conclusion that his discipline was racially motivated.

Plaintiff's second claim asserts selective enforcement of disciplinary rules.  To state a claim for selective enforcement, Plaintiff must satisfy a three-part test.  *Gardenhire v. Schubert, 205 F.3d 303, 318-19 (6th Cir. 2000)*.  First, he must allege he belongs to an identifiable group, such as race or religion, and he was singled out for prosecution when persons not belonging to that group were not prosecuted in similar situations.  *Id.*  Second, the official must initiate the prosecution with a discriminatory purpose.  Third, the prosecution must have a discriminatory effect on the group to which Plaintiff belongs.  *Id.*

Plaintiff has not alleged facts to support any of these elements of his cause of action.  He contends he is a person of color and that he was subjected to discipline; however, he also alleges that inmates of other races were charged.  Indeed, he claims that in addition to the three inmates of color, two Hispanic inmates and one Canadian inmate were given conduct reports.  These inmates may have been selected over other inmates in the housing unit, but there are no facts in the Complaint (ECF No. 1) to suggest a particular racial group was singled out for discipline.

Moreover, Plaintiff has not alleged facts to suggest his disciplinary prosecution had a discriminatory purpose or a discriminatory effect on people of color.  "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group."  *Hernandez v. New York, 500*

6

(4:11CV0804)

U.S. 352, 360 (1991) (quoting *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)); *see also Coyne v. City of Sommerville*, 972 F.2d 440, 445 (1st Cir. 1992). Plaintiff's allegation that he and two of the six inmates charged were people of color does not by itself show that Defendants were motivated to discriminate against him on the basis of his race or ethnicity. Similarly, his allegation that the two Hispanic inmates were found not guilty of the charges at their disciplinary hearings does not, without more, suggest a discriminatory effect on inmates of color. A Complaint that contains only conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief. *See Iqbal*, 129 S.Ct. at 1950-51. Plaintiff has not set forth sufficient facts to state a claim for selective enforcement of the disciplinary rules.

### B. **Due Process**

Plaintiff next claims he was denied a fair disciplinary hearing. The Court liberally construes this claim as asserting a denial of procedural due process.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law. . . ." U.S. CONST. AMEND. V. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

7

(4:11CV0804)

Prisoners have narrower liberty interests than other citizens as "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)); *Evans v. Vinson*, No. 09-6283, 2011 WL 2579779, at *4 (6th Cir. June 29, 2011).  The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty interest.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  The Due Process Clause, standing alone, confers no liberty interest in freedom from state action taken within the sentence imposed. *Sandin*, 515 U.S. at 480.  "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485.  "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Wilkinson*, 545 U.S. at 221.

Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case.  *Sandin*, 515 U.S. at 484.  Assignment to a super-maximum security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in disciplinary confinement was considered to be "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life," *Sandin*, 515 U.S. at 487.  Similarly, the Sixth Circuit Court of Appeals has held a prisoner's designation as a member of a security threat

(4:11CV0804)

group did not give rise to a liberty interest.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005).

Plaintiff was found guilty of the conduct charges and was sanctioned, in part, to loss of good time credits.  Because Plaintiff alleges he was sanctioned with the loss of good time credits, he is arguably entitled to due process protections.  Due process, however, requires only that a prisoner receive notice of the hearing, an opportunity (when consistent with institutional safety and correctional goals) to call witnesses and present documentary evidence in his defense, and a written statement by the factfinder of the evidence relied on and the reason for the action.  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).  Furthermore, some evidence must exist to support the disciplinary conviction.  *Superintendent, Mass. Corr. Institution, Walpole. v. Hill*, 472 U.S. 445, 455-56 (1985).  Due process does not guarantee that Plaintiff will receive the result he desires.  *Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990).  It only gives him notice and an opportunity to be heard concerning his sanction.

Plaintiff attaches a copy of the conduct report, ECF No. 1-2, which indicates Plaintiff received a written copy of the charges on February 7, 2011.  The hearing was held on February 22, 2011.  He does not allege he was prevented from presenting a defense at this hearing. Finally, he was given a written statement of the decision, which included the evidence on which the Rules Infraction Board relied to arrive at the conclusion, including written statements from Lieutenant Frail, Officer Kish, Mr. Fox, and Officer Dermer.  That decision was based upon some evidence.  The Court concludes Plaintiff has not stated a viable claim for denial of procedural due process.

(4:11CV0804)

### C.  Eighth Amendment

Finally, Plaintiff asserts Officer Kish violated his Eighth Amendment rights by making derogatory comments about his immigration status.  Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  *Id.*  Seriousness is measured in response to "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Routine discomforts of prison life do not suffice.  *Id.*  Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment.  *Id.* at 9.  Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind.  *Id.*  Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Liability cannot be predicated solely on negligence.  *Id.*  A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff fails to establish the objective component of his claim.  An Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness.  *Wilson*, 501 U.S. at 298; *Street v. Corrections*

10

(4:11CV0804)

*Corporation of America*, 102 F.3d 810, 814 (6th Cir. 1996). In sum, this prong of the Eighth

Amendment affords protection against conditions of confinement which constitute health threats,

but not against those which cause mere discomfort or annoyance. *Hudson*, 503 U.S. at 9-10

(requiring extreme or grave deprivation). Verbal harassment and offensive comments by

corrections officers are not extreme deprivations which constitute serious health risks. *See Ivey*

*v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). While Plaintiff may have found Officer Kish's

comments disrespectful, they do not support a claim for relief under the Eighth Amendment.

## IV.  Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court

certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken

in good faith.[3]


IT IS SO ORDERED.


  September 6, 2011                             */s/ Benita Y. Pearson*
Date                                                     Benita Y. Pearson
                                                      United States District Judge

---

[3] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is
not taken in good faith.

11